**IN THE COURT OF APPEALS OF IOWA**

No. 25-1246
Filed December 17, 2025

**IN THE INTEREST OF L.V.-G.,**
**Minor Child,**

**A.C., Father,**
　　Appellant.
_____

　　Appeal from the Iowa District Court for Polk County, Kimberly Ayotte, Judge.


　　A father appeals the termination of his parental rights to his son.
**AFFIRMED.**


　　Shireen L. Carter of Shireen Carter Law Office, PLC, Norwalk, for appellant father.

　　Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

　　Sarah Dewein of Cunningham & Kelso PLLC, Urbandale, attorney and guardian ad litem for minor child.


　　Considered without oral argument by Chicchelly, P.J., and Buller and Langholz, JJ.

**LANGHOLZ, Judge.**

A one-year-old son was removed from his parents' custody after the mother drove her car—with the son in it—while intoxicated.[1] The father was in jail awaiting a probation-violation hearing for violating a no-contact order protecting the mother. Over the next year, the father was mostly in—or escaped from—custody, repeatedly violated court orders, struggled with substance use, declined to accept responsibility for his prior misconduct, minimized his history of domestic violence, and failed to make meaningful use of the services offered to him. Seeing no prospect that the father would improve in the foreseeable future, the juvenile court thus terminated his parental rights.[2]

On appeal, he argues that termination was not in the best interest of the son. But on our de novo review, we agree with the juvenile court. Given the father's failure to address his substance-use issues, his lack of progress with the many services offered to him, his unwillingness to comply with court orders, and his history of domestic abuse, terminating the father's parental rights is in the best interest of the son. We thus affirm the juvenile court.

## I. Factual Background and Proceedings

The son first came to the attention of the Department of Health and Human Services ("HHS") in April 2024—just two days after his first birthday—when his mother was arrested for child endangerment after driving intoxicated with the son

---

[1] We avoid using the parties' names to respect their privacy because this opinion—unlike the juvenile court's order—is public. *Compare* Iowa Code § 232.147(2) (2025), *with id.* §§ 602.4301(2), 602.5110; *see also* Iowa Ct. R. 21.25.

[2] The State petitioned to terminate only the father's parental rights. At the time of the termination hearing, the mother's permanency goal remained reunification with an extra six months to work toward that goal.

in the car. Less than two weeks later, the son was removed from the mother's custody and placed with relatives. At the time the son was removed, the father was in jail awaiting a hearing for allegedly violating his probation—on domestic-abuse-assault and false-imprisonment offenses against the mother—by violating a no-contact order protecting her. The son was adjudicated in need of assistance in June 2024.

Beyond the abuse that led to criminal charges, the mother told HHS that the father began abusing her while she was pregnant with the son and continued to abuse her after the son was born—including in the son's presence. The father also has unresolved substance-use issues. Following the August 2024 disposition hearing, the father tested positive for cocaine. He denied using cocaine and blamed the positive drug test on sipping another man's drink. But he later admitted to his therapist that he relapsed with cocaine.

Then in October, he was back in jail for violating probation. The violation included "possession of a synthetic intoxicant," which the father again denied despite showing behavioral signs of use. While in jail for his probation violation, he was unable to attend his court-ordered therapy and domestic violence treatment. And the court ultimately found him in contempt and ordered him to serve 60 days in jail.

While placed in the Fort Des Moines community-based corrections residential facility in early 2025, the father also had problems. He threatened a staff member saying that he would "knock him out." He then escaped from the facility, leading to a warrant for his arrest. And while on the run, he phoned the mother and bragged to her about how he could use illegal drugs again. After being

charged with escape from the facility, the father turned himself in and pleaded guilty. The court sentenced him to 70 days in jail for the escape to run concurrent with the jail time for the probation violations and discharged him from probation unsuccessfully.

Then in late April 2025, the juvenile court held a contested permanency hearing for the son. The father testified at the hearing, but the court found that "he took no responsibility for domestic violence or his assaultive behavior." Neither did he "take responsibility for his conduct at the Fort." And the court found that the father was a risk to the mother's well-being and her substance-use recovery. So the court changed the father's permanency goal to termination and ordered the State to file a petition to terminate his parental rights.

After a June 2025 termination hearing, the juvenile court terminated the father's parental rights under Iowa Code section 232.116(1)(h) (2025). The court reasoned that the father "has not completed substance treatment and is not in consistent therapy" and that he has failed to complete "IDAP classes to address domestic violence." It also found that the father "continues to show a lack of accountability," and his "conduct has caused him to be in and out of jail throughout this case"—conduct that has "had a negative impact on [the son]." The court thus concluded that termination of the father's parental rights was in the son's best interest. The father appeals.

## II.     The Son's Best Interest

Terminating parental rights under Iowa Code chapter 232 follows a three-step process. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022). First, the State must prove a statutory ground for termination. *Id.* Second, the State must show

termination is in the best interest of the child.  *Id.*  And finally, the parent bears the burden to show whether a discretionary exception applies that should preclude termination.  *Id.*  We review a termination decision de novo, giving "respectful consideration" to the juvenile court's factual findings, especially when based on credibility determinations.  *In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021).

The father does not dispute the grounds for termination or argue for an applicable exception.  He challenges only the second step—whether it is in the son's best interest to terminate his parental rights.  He argues that it is unfair to terminate his rights while the mother was given extra time to work toward reunification and that termination would harm the son because of the loss of the father's financial support and his bond with the son.

But the best interest of the child—not the fairness to the parent—is the "paramount concern in a termination proceeding."  *L.B.*, 970 N.W.2d at 313.  Whether the mother should have been given extra time is not before us—only whether termination of the *father's* parental rights is in the son's best interest.  We consider both the child's long-term and immediate best interest.  *See In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997).  And we must give "primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child."  Iowa Code § 232.116(2); *see also In re M.W.*, 876 N.W.2d 212, 224 (Iowa 2016).  Yet the "potential loss of child support" is not "a component of the section 223.116(2) best interest test."  *In re H.S.*, 805 N.W.2d 737, 749–50 (Iowa 2011).

On our de novo review, we agree with the juvenile court that termination is in the son's best interest. For starters, the father has been in and out of jail or community-based-correctional facilities for most of the son's life. His own actions—abusing the mother, using illegal substances, and violating probation and no-contact orders—that have caused his absence in the son's life. Yet he continuously fails to take accountability for his actions and lack of progress. Indeed, when asked at the hearing why he was not dedicated to doing what was necessary to ensure custody of his son, he said "probation."

The district court found that the father "doesn't believe he needs substance abuse treatment," that he "does not take full accountability for his probation violations," and that he "minimizes his assaultive and domestic abusive behavior." We agree that this is problematic because "[i]t is vital" for a parent to "recognize abuse occurred" so that "meaningful change can occur" and the parent can "meet[]the child's needs." *In re T.J.O.*, 527 N.W.2d 417, 421 (Iowa Ct. App. 1994) (cleaned up).

So the father still poses a safety risk to the son and mother. The mother reported that he physically abused her while she was pregnant and in the presence of the son once he was born. And he violated the resulting no-contact order by following the mother to her house. Any minimal progress is overshadowed by his history of abuse. *See In re C.B.*, 611 N.W.2d 489, 494 (Iowa 2000) (reasoning that while the parent "took positive steps to turn her life around in the months prior to the termination hearing, these steps do not eliminate her past").

The father has also failed to recognize the dangers of his substance use and that of the mother. After he escaped the Fort Des Moines facility, he bragged

to the mother about how he could use illegal substances again. And while he was in jail, he called the mother more than 100 times. In one of these calls, he encouraged the mother—who also has substance-use and alcohol problems—to drink alcohol despite these proceedings starting because of her conduct driving while intoxicated.

What's more, the father has shown little, if any, progress throughout these proceedings. HHS has offered the father many services to correct his behavior and give him an opportunity to be a parent to his son. But he has not taken advantage of them to remedy the situation and be a parent to his son.

At bottom, the father has been largely absent from the son's life because of his own actions. So considering the son's safety, overall well-being, and the father's inability to take responsibility for his actions or show improvement after numerous opportunities and services were provided, termination is in the best interest of the son. We thus affirm the juvenile court's termination order.

**AFFIRMED.**